# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                            :
RALPH P. BLAKNEY,                           :
                 Plaintiff,                 :
                                            :
        v.                                  :
                                            :      C.A. No. 12-6300
CITY OF PHILADELPHIA, et al.                :
                 Defendants.                :
_____:

## ORDER

**AND NOW**, this _____ day of _____, 2013, upon consideration of defendants'

City of Philadelphia, Linda Turner, and Lynn Spiro's Motion to Dismiss, it is ORDERED plaintiff's

amended complaint is dismissed with prejudice.


                                        BY THE COURT:


                                        _____
                                                                    **J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ | : |
| RALPH P. BLAKNEY, | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : C.A. No. 12-6300 |
| CITY OF PHILADELPHIA, et. al | : |
| | : |
| Defendants. | : |
| _____ | : |

**DEFENDANTS CITY OF PHILADELPHIA, LINDA TURNER, and LYNN SPIRO'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COME defendants, the City of Philadelphia, Linda Turner, and Lynn Spiro, by

their undersigned attorney, Margaret J. Theranger, Esq., to move for an order dismissing

plaintiff's amended complaint with prejudice.  Defendants respectfully submit that such relief is

warranted for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
SHELLEY R. SMITH, City Solicitor
ELIZABETH MATTIONI, Chair, Litigation Group
SUZANNE REILLY, Chief Deputy City Solicitor

/s/ Margaret J. Theranger____
MARGARET J. THERANGER
Pa. Attorney ID No. 259166
Assistant City Solicitor
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
(215) 683-5183

Date: April 2, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
:
RALPH P. BLAKNEY,                          :
        Plaintiff,                        :
                     :
      v.                                      :
                     :     C.A. No. 12-6300
CITY OF PHILADELPHIA, et. al              :
                     :
        Defendants.                         :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants City of Philadelphia,

Linda Turner, and Lynn Spiro move for dismissal of plaintiff's amended complaint with

prejudice. Plaintiff has failed to aver facts that create a plausible claim under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 et seq., the Pennsylvania Human Relations Act

("PHRA"), 43 P.S. §§ 951-963, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

I.      **STATEMENT OF FACTS**

Plaintiff's amended complaint appears to allege that the defendants retaliated against him

and violated his rights to due process and equal protection when he was not reinstated to a

position from which he resigned. Plaintiff, however, avers very few clear facts to support each

claim [1]

A.  **Plaintiff's Averments**

---

[1] Defendants dispute plaintiff's version of the facts that he does aver, but accept them as true for the purposes of this motion.

Plaintiff, a black male, was hired in July 1988 as the Older Adult Center Director in the City of Philadelphia's Parks and Recreation Department ("Parks and Recreation"). *Amend. Compl.* ¶¶ 6, 12. Plaintiff names three defendants: the City of Philadelphia, Linda Turner, and Lynn Spiro. *Id.* at ¶¶ 7-9. Linda Turner is the City's Director of Human Resources for Parks and Recreation and Lynn Spiro is the Director of Older Adult Services for Parks and Recreation. *Id.* at ¶¶ 8-9.

On or about June 6, 2008, Plaintiff filed a charge of race discrimination against defendants with the Equal Employment Opportunity Commission under Charge No. 530-2008-0225. *Id.* at ¶ 13. Plaintiff alleges that he subsequently filed a complaint with the U.S. District Court for the Eastern District of Pennsylvania under Civil Action no. 10-4237-RB ("First Civil Action") but fails to provide the filing date. *Id.* at ¶ 14. Plaintiff does aver that he complained of racial discrimination by Linda Turner and Lynn Spiro in the First Civil Action and that they both acted as witnesses for the City. *Id.* at ¶ 26. Plaintiff also avers that the District Court granted the City's motion for summary judgment in the First Civil Action on July 1, 2011. *Id.* at ¶ 17. However, plaintiff alleges that the First Civil Action "ended" on or about September, 22 2011. *Id.* Plaintiff filed a notice of appeal from the District Court's dismissal of his complaint in the First Civil Action on October 11, 2011. *Id.* at ¶ 18.

Prior to the resolution and subsequent appeal of the First Civil Action, in or about January of 2011, Plaintiff resigned from his position with Parks and Recreation to take care of his terminally ill mother. *Id.* at ¶ 15. Plaintiff alleges that he formally notified all defendants about his mother's illness and submitted certification in accordance with the Family Medical Leave Act. *Id.* at ¶ 16. On September 26, 2011 Plaintiff "demanded" reinstatement to his employment with the City of Philadelphia pursuant to Civil Service Regulation 15.031. *Id.* at ¶

18.  Plaintiff hand delivered a letter to the City's Director of Human Resources requesting reinstatement to his former position (or any other open position) and observed that letter being faxed to Linda Turner.  *Id.* at ¶ 22.  On December 14, 2011 Plaintiff alleges that he hand delivered another request for reinstatement to the City's Human Resources Office and again observed a copy of his request being faxed to Linda Turner.  *Id.* at ¶ 24.  Plaintiff alleges that Lynn Spiro, his former direct supervisor, was the "authorized person for approving Plaintiff's reinstatement request" but also claims that both Linda Turner and Lynn Spiro were the "appointing authorized officials responsible for approving Plaintiff's reinstatement request."  *Id.* at ¶ ¶ 9, 25.  Plaintiff avers that his former position with Parks and Recreation had been vacated for eight months, that the City and individual defendants knew and was aware of his reinstatement request, that they failed to respond to plaintiff and "quickly filled" his former position with another employee after receiving his request.  *Id.* at ¶¶ 20-21, 27.  Finally, plaintiff claims that he was entitled to reinstatement to other comparable positions under Civil Service Regulation 15.031, but defendants failed to reinstate him to those other comparable positions for which he was qualified.  *Id.* at ¶ 29.

B. **Civil Service Regulation 15.031.**

Plaintiff relies on Civil Service Regulation 15.031 but does not quote it or attach a copy to his complaint.  Specifically, he alleges that the regulation "entitles" him to reinstatement to his former position or a comparable position and defendant's failure to reinstate him was in violation of the regulation.  *Id.*  Civil Service Regulation 15.031 states

> An employee who has resigned in good standing may be reinstated within one year to any position in the City service in the same class, in a comparable class, or in a lower class in the same or comparable series of classes having substantially the same qualification requirements, skills or aptitudes if such reinstatement is approved by the Director and by the appointing authority of the department in which the reinstatement is to be

made.  All employees reinstated following resignation must serve a new probationary period of six (6) months.

Reg. 15.031, attached as Exhibit "1." [2]

### C. Plaintiff's Claims

Plaintiff brings four counts, not all of which are directed against all defendants.  The first count, for alleged retaliation under Title VII, is directed against the City of Philadelphia.  The second count, for an alleged violation of Section 1981, is against individual defendants Linda Turner and Lynn Spiro only.  The third count, for alleged violation of Plaintiff's First and Fourteenth Amendment rights under Section 1983, is against all defendants.  Finally, the fourth count, for an alleged violation of the PHRA's anti-retaliation provision, is brought against the City of Philadelphia.

### II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations contained in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When considering such a motion, the court "accept[s] as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them.  Dismissal under Rule 12(b)(6) . . . is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved."  *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

This liberal pleading standard, however, does not excuse plaintiff from adequately stating claims and supporting those claims with facts consistent with those allegations.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Nor must a court credit "a complaint's 'bald assertions.'"  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *In re*

---

[2] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

*Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

Although a court must consider the pleadings as true when evaluating a motion to dismiss, a

court need not consider a plaintiff's bare legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (holding that all civil complaints must contain "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation").

  As the Third Circuit has recognized, this plausibility standard requires the district court to

conduct a two-part analysis of complaints. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-

11 (3d Cir. 2009).  First, courts should separate "the factual and legal elements of a claim, so that

while the district court must 'accept all of the complaint's well-pleaded facts as true,' it may

"disregard any legal conclusions.'" *Id*.  Second, the court must then determine "whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

relief.'" *Id*. (citing *Iqbal*, 556 U.S. at 679).

  In the *Iqbal* decision, the Court explicitly applied *Twombly*'s more stringent pleading

standard to other civil claims.  *Iqbal*, 556 U.S. at 669-670.  *Iqbal* made clear that legally

conclusory pleadings, or pleadings whose factual allegations do no more than establish a

possibility of the defendant's liability, should not survive a motion to dismiss.  *Id.* at 677-681.

The Court also stated that when analyzing the well-pleaded facts of the complaint for motion to

dismiss purposes, a court must look to the claim at hand and determine if the plaintiff's

allegations make the likelihood of the defendant's misconduct plausible, not just conceivable.

*Id.* at 679.

  III. **LEGAL ARGUMENT**

  Plaintiff brings four counts of retaliation against defendants in his amended complaint.

Plaintiff's claims under Counts I and IV must be dismissed with prejudice because plaintiff fails

to aver facts sufficient to create a prima facie case of retaliation under Title VII and the PHRA.[3] Plaintiff fails to aver any facts to show a causal connection between his protected activity and an adverse employment action, instead relying solely on legal conclusions.

Plaintiff's claims under Count II must be dismissed because plaintiff fails to assert a plausible section 1981 claim against the individual defendants. Substantively, the legal standards for a section 1981 retaliation claim are the same as those applicable to a Title VII retaliation claim. Therefore Count II should be dismissed with prejudice because plaintiff fails to aver facts sufficient to create a prima facie case of retaliation as reasoned under Counts I and IV. Procedurally, section 1981 does not create an independent cause of action against state actors for violations of its terms and must be brought pursuant to Section 1983. Therefore, Count II should be dismissed with prejudice because plaintiff fails to establish defendants' liability as reasoned under Count III.

Plaintiff's claims under Count III must be dismissed with prejudice because plaintiff amended his complaint and still fails to assert a plausible section 1983 violation for deprivations of his First and Fourteenth Amendment rights. Section 1983 is a remedial statute that does not create rights, but provides a remedy for violation of Constitutional rights. To bring a section 1983 claim, a plaintiff must plead three elements: (1) defendants acted under color of law; (2) defendants violated plaintiff's federal constitutional or statutory rights; and (3) that violation caused injury to plaintiff. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). Plaintiff fails to properly identify specific constitutional rights, to aver facts that Defendants violated those rights, and to establish any of the defendants' liability. Therefore, plaintiff's section 1983 claim must be dismissed with prejudice.

---

[3] Pennsylvania courts interpret Title VII and the PHRA as coextensive. *Atkinson v. Lafayette College*, 460 F.3d 447, 454n.6 (3d Cir. 2006)

### A.  Plaintiff's Statutory Retaliation Claims under Title VII and PHRA Fail Because Plaintiff Has Not Shown a Plausible Claim For Relief

Plaintiff's does not create a plausible claim for relief under Title VII and the PHRA's anti-retaliation provisions because he fails to allege facts that show that his EEOC complaint and federal lawsuit filed against the City in 2008 caused or is connected to his failure to be reinstated after his resignation in 2011.

To create a prima facie case for retaliation, a plaintiff must show that (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; (3) there is a causal connection between his participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).   A causal connection between protected activity and adverse employment actions can be shown with direct evidence of retaliatory intent.  Without direct evidence of retaliatory intent to satisfy the causal prong of retaliation under Title VII, a plaintiff must point to either (1) a temporal proximity that is "unusually or unduly suggestive" of retaliation, or (2) to some temporal proximity plus evidence of an intervening period of antagonism.  *Williams v. Phila. Hous. Auth. Police Dep't.*, 380 F.3d 751, 759-60 (3d Cir. 2004).  Even a period of less than one month between protected activity and an adverse employment action has been held not to be "unusually or unduly suggestive" of retaliation, absent any other evidence of intervening period of antagonism. *McLaughlin v. Fisher*, 277 Fed. Appx. 207, 218 (3d Cir. 2008) (a period of less than a month, alone, not suggestive of a retaliatory motive). [4]  In the absence of suggestive temporal proximity, the proffered evidence may also be examined "as a whole to raise an inference of causation." *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007).

---

[4]*See also Walker v. Independence Blue Cross,* 2005 US Dist. Lexis 10219 (E.D. Pa. 2005) (four months too long); *Todd v. New England Motor Freight*, 2004 US Dist. Lexis 7099 (E.D. Pa. 2004) (three-and-one-half months too long); *Woods v. Bentson*, 889 F. Supp 179, 187 (E.D. Pa. 1997) (four months too long); *Pritchett v. Imperial Metal and Chemical Co.*, 1997 US Dist. Lexis 13841 (E.D. Pa. 1997) (two months too long).

Not only does plaintiff fail to provide facts that show direct retaliatory intent on behalf of the defendants, facts that he does allege cannot—as a matter of law—establish retaliation.  In reference to his protected activity, plaintiff avers that he filed an EEOC charge on June 6, 2008, for race discrimination. *Amend. Compl.* at ¶ 13. The defendants agree that plaintiff's EEOC charge constitutes protected activity.  Although he avers that he received a right to sue letter, filed a suit in federal court, and individual defendants participated in the suit as witnesses for the City, he does not provide any dates for these alleged events.  Plaintiff does allege that the District Court granted the City's motion for summary judgment on July 11, 2011 and he appealed that decision on October 11, 2011. *Id.* at ¶¶ 17-18.  In reference to an adverse employment action, plaintiff avers that on September 26, 2011 and December 14, 2011 he "demanded" reinstatement but received no response. *Id.* at ¶¶ 22, 24, 28.

Plaintiff fails to establish a causal connection based on temporal proximity between his alleged protected activities and the alleged adverse employment actions.  A period of three years between the filing of the EEOC complaint and the failure to reinstate is not unusually suggestive. Even if the protected activity is extended the District Court's action of granting the City's summary judgment motion in July 2011, a time period of over two months is not unusually suggestive.  Further, if the October 11, 2011 appeal of the District Court's order granting the City's motion for summary judgment is considered a new protected activity, two months between that appeal and the failure to reinstate on December 14, 2011 is not unusually suggestive.

Plaintiff fails to aver facts that defendants subjected him to a period of intervening antagonism.  The Third Circuit has found a "pattern of antagonism" where the plaintiff was subjected to a "constant barrage of written and verbal warnings, inaccurate point totalings, and

disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge." *See Robinson v. Se. Pa. Transp. Auth.* 982. F.2d 892, 895 (3d Cir. 1993). Plaintiff makes no averments that defendant's subjected plaintiff to any "antagonistic" actions in the workplace. Other than alleging that plaintiff engaged in protected activities and resigned in January of 2011 due to his mother's illness, there are no averments of any interaction between plaintiff and the defendants between the filing of his EEOC charge (or, to take a presumably-later but undated event, the filing of his federal lawsuit), and plaintiff's "demands" to be reinstated to his former or a comparable position. After his "demand" for reinstatement, plaintiff only lists the following averments that defendants:

- knew and were aware that plaintiff was seeking reinstatement because he hand delivered his request to the Office of Human Resources and observed an employee fax his request for reinstatement to Linda Turner on two occasions;

- denied or failed to respond to his "authorized" reinstatement and quickly filled the position; and

- had other comparable positions but denied or failed to respond to plaintiff's reinstatement in supposed violation of Regulation 15.031.

*Amend. Compl.* at ¶¶ 17-19.

Plaintiff's remaining "factual" averments are based on a willful misrepresentation of Regulation 15.031, which, despite what plaintiff tries to suggest, does not mandate reinstatement within a year after a former employee's resignation. This misstatement of fact cannot give rise to an inference of causation. Plaintiff concludes that he was retaliated against, but does not plead facts to allow the court to infer more than a mere possibility of retaliation. Therefore, Counts I and IV should be dismissed.

> **B.  Plaintiff's Claim Under 42 U.S.C. § 1981 Fails because he Does Not Provide a Plausible Claim for Relief or Establish Defendants' Liability.**

The legal standards for a retaliation claim under Section 1981 are the same as those applicable to a Title VII retaliation claim. *See, e.g., Cardenas v.Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 335-36 (D.N.J. 1995) (noting that with respect to retaliation claims, "the Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII."). Therefore, plaintiff's section 1983 claim must be dismissed with prejudice under the same reasoning as described in Section A of this brief.

Even if plaintiff were able to establish that his section 1981 rights were violated, he cannot establish liability for the individual defendants under section 1983.[5]  42 U.S.C. § 1981 does not provide an independent cause of action against state actors for violations of its terms. *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009). Any remedy plaintiff may have for a violation of rights under that statute is through 42 U.S.C. § 1983.  *See Roadcloud v. Pa. Bd. of Prob. & Parole*, 2006 U.S. Dist. LEXIS 925, 9-10 (E.D. Pa. Jan. 6, 2006) (merging section 1981 claims against individual defendants into section 1983 claims); *see also Cooper v. City of Coatesville,*, 2013 U.S. Dist. LEXIS 621, *5 (E.D. Pa. Jan. 3, 2013) (dismissing § 1981 claim against individual defendant for lack of remedy against defendants acting under color of state law). Cooper named both the municipality and the Chief of police as defendants and claimed that the Chief subjected him to harsher disciplinary standards and restricted his rights.  *Cooper*, 2013 U.S. Dist. Lexis at *2. The plaintiff conceded there was no remedy under section 1981 against the municipality, but argued that he could proceed under that statute against individual municipal employees.  *Id.* at *4.   The court dismissed the section 1981 claim against both the municipality and the individual defendant, stating

> "we see no cause for differentiating between 'state actor' municipal liability under § 1981 and 'state actor' liability under § 1981 of a municipal officer or

---

[5] In his amended complaint, plaintiff includes a section 1981 claim against individual defendants under Count II and includes that same Section 1981 claim again under Count III's section 1983 claim. *Amend. Compl.* ¶¶ 35, 39.

employee." *Id.*  There is simply no remedy under section 1981 against a defendant acting under color of state law. The remedy lies solely under section 1983." *Id* at *5.

Plaintiff specifically states in his amended complaint that "at all material times to this case" all of the named individual defendants were acting "under color of state law". *Amend. Compl.* at ¶ 11.  Because plaintiff has brought a section 1981 claim against state actors acting under state law and fails to establish their liability as discussed under Section C of this brief, Count II must be dismissed with prejudice.

**C.  Plaintiff's Does Not State a Plausible Claim for Relief under § 1983.**

Plaintiff's section 1983 claims against defendants are fatally flawed.  Section1983 is a remedial statute for deprivations of rights established by the U.S. Constitution and federal laws that do not otherwise provide a remedy, and it does not create substantive rights.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).  In order to analyze a section 1983 claim, the Court must first "'identify *the exact contours of the underlying right* said to have been violated' and [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Kaucher*, 455 F.3d at 423 (quotation omitted) (emphasis added).  Only after plaintiff has actually plausibly alleged a deprivation of a constitutional right should the court then determine if she has sufficiently alleged that the defendants can be held liable.  *See id.* at n.2.

Plaintiff's claims under the First Amendment, Fourteenth Amendment due process clause, and Fourteenth Amendment equal protection clause fail because he does not identify the underlying right said to be violated under each clause.  Even if he had properly identified the right, he has not alleged a deprivation of any of those constitutional rights nor established the

liability of any defendants'. Because plaintiff has failed to correct any of these flaws in his amended complaint, Count III must be dismissed with prejudice.

    1. <u>Plaintiff Cannot State a Plausible Claim for First Amendment Retaliation Because Plaintiff's EEOC Charge and Prior Lawsuit are not Protected Activity.</u>

In Count III of plaintiff's amended complaint, plaintiff alleges that he exercised his First Amendment right by "opposing and protesting Defendants' unlawful discriminatory conducts and practices, and complaining to authorities about the unlawful conducts and practices." *Amend. Compl.* at ¶ 38.  The only factual averment that supports his claim is that he filed an EEOC complaint for race discrimination in 2008 and subsequently filed a lawsuit.

    *i.*   *Plaintiff fails to identify the contours of his right under the First Amendment.*

Plaintiff does not specify which right under the First Amendment was allegedly violated by defendants.  The First Amendment prohibits Congress from making laws "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Due to the fact that plaintiff avers that he filed an EEOC complaint and lawsuit, the best inference is that he exercised his right to freedom of speech or right to petition the government.  Under a recent decision by the Supreme Court, the Court identified that  in public employment cases (1) Petition Clause activity is coextensive with the protection afforded Free Speech activity and (2) the First Amendment protects this activity only if petitioner speaking as citizen on matter of public concern. *See Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011).

> ii.    *Plaintiff was not speaking as a citizen on a matter of public concern when he filed his EEOC complaint and subsequent lawsuit.*

When a public employee sues a government employer for violations of the Free Speech or Petition Clauses, the employee must show that he or she spoke as a citizen on a matter of public concern.  *Duryea,* 131 S. Ct. at 2489  "If the Petition Clause were to apply even where matters of public concern are not involved, that would be unnecessary, or even disruptive, when there is already protection for the rights of public employees to file grievances and to litigate." *Id.* at 2497.  "The right of a public employee under the Petition Clause . . . is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts."  *Id.* at 2501.

Courts in this district have repeatedly ruled that plaintiffs complaining of their own discrimination do not speak as citizens on a matter of public concern, and, thus, are not able to maintain a First Amendment retaliation claim.[6]

An employee's speech or petition clause activity involves a matter of public concern where "it can be fairly considered as relating to any matter of political, social or other concern to the community."  *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (quoting *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001)).  Plaintiff's alleged complaints pertained only to conduct directed towards him and were made only to advance his own interests.  For instance, in Count III of plaintiff's amended complaint, he alleges the following protected activity:

- "Plaintiff exercised his Constitutional rights under the First Amendment . . . by opposing and protesting Defendants' unlawful discriminatory conducts [sic], and complaining to authorities about the Defendants' unlawful discriminatory conducts [sic]."

---

[6] *See Miles v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 107499 (E.D. Pa. 2011); *Heep-Davis v. City of Philadelphia*, No. 09-cv-5619, 2010 U.S. Dist. Lexis 39023, *10 (E.D. Pa. 2010); *Middleton v. Deblasis*, 2011 U.S. Dist. LEXIS 149802 (E.D. Pa. 2011); *Pettus v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 87525 (E.D. Pa. Aug. 5, 2011).

*Amend. Compl.* at ¶ 38.  The only factual allegations to support this conclusory statement are:

- "On or about June 6, 2008, Plaintiff filed a complaint of race discrimination against Defendants with the EEOC under Charge No. 530-2008-02625."

- "Plaintiff continued prosecution [of] his race discrimination claims against Defendants in the United States District Court after receiving a notice of right to sue in the previous matter under civil action No. 10-4237-RB."

- "Plaintiff continued asserting his claim of race discrimination in the Previous Action by filing a notice of appeal on October 11, 2011 of the District Court's dismissal of his Previous Action."

*Id.* at ¶¶ 13, 14, 18.  As pled, plaintiff's allegations do not involve a matter of public concern.

*See Miles*, 2011 U.S. Dist. LEXIS 107499 at 9-13.  The *Miles* court embraced the *Duryea* decision and dismissed a plaintiff police officer's nearly identical claim of First Amendment retaliation where the plaintiff's complaints to the Police Department, the PHRC, and the EEOC concerned only her own individual claims of employment discrimination and did not "implicate defendants in a pattern of conduct directed at anyone other than her."  *Id.* at 12.

Because plaintiff's alleged complaints concern only his own individualized treatment by Defendants, he has failed to allege facts sufficient to establish that he spoke out as a matter of public concern and, as a result, his First Amendment retaliation claim under section 1983 must be dismissed with prejudice.

      2.   <u>Plaintiff Cannot State a Plausible Claim for Violations of his Fourteenth Amendment Rights to Procedural or Substantive Due Process or Equal Protection.</u>

Plaintiff's alleged Fourteenth Amendment claims are virtually incoherent.  In the "Introduction" to his complaint, plaintiff alleges that he engaged in protected activities under the "unequal protection" clause, but then fails to aver any facts to support that claim. *See Amend. Compl. at* ¶ 2.  Later, in Count III, plaintiff alleges that (1) he engaged in activities protected under some unspecified clause of the Fourteenth Amendment, (2) the defendants are liable for

16

some unspecified failure to train either the individual defendants or unnamed individuals on some unspecified process which somehow violated plaintiff's "due process" rights, and (3) defendants displayed deliberate indifference to plaintiff's property rights.  *Id.* at ¶ 38-42. Plaintiff does not specify if defendants allegedly violated his procedural due process rights or substantive due process rights.  Assuming *arguendo* that plaintiff has asserted claims for violation of his rights to procedural and substantive due process, as well as equal protection, he fails to plausibly allege a deprivation of those rights and liability on the part of any defendant. Therefore, his Fourteenth Amendment retaliation claim must be dismissed with prejudice.

> ### i.   *Plaintiff does not have a legitimate claim of entitlement to employment.*

In order to assert a procedural due process claim, plaintiff must identify a property interest protected by the Due Process Clause.  Plaintiff "must show that under Pennsylvania law, he had a legitimate claim of entitlement to employment."  *Anderson v. Philadelphia*, 845 F.2d 1216, 1220 (3d Cir. 1988).  It is not enough that plaintiff claims that he has some theoretical right to reinstatement; he must plausibly aver that he has a "legitimate claim of entitlement" in order to establish a property interest.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.  It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
>
> Property interests . . . are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law— rule or understandings that secure certain benefits and that support claims of entitlements to those benefits.

*Id.*

Plaintiff does not have a property interest in his former position.  He claims that his reinstatement was "authorized" and defendant's failure to reinstate him is in "violation of the Civil Service Regulation."  The existing rule that could potentially create a property interest in employment is Regulation 15.031.  This regulation makes clear that an employee who has resigned **may** be reinstated if such reinstatement is approved by the Director and the appointing authority.  Regulation 15.031's clear discretionary language does not create a rule or understanding to support a claim of entitlement.  Because plaintiff has no property right in his employment, his Fourteenth Amendment procedural due process retaliation claim must be dismissed with prejudice.

ii.   *Plaintiff has no substantive due process property interest in public employment.*

Substantive due process protects only "fundamental" rights from government conduct that "shocks the conscience."  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (substantive due process protects only "basic rights that underlie our society"); *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998) (state action depriving plaintiff of fundamental right must be arbitrary and capricious).  Public employment is not a fundamental right.  *See, e.g., Hill v. Borough of Kutztown*, 455 F.3d 225, 235 & n.6 (3d Cir. 2006) (dismissing plaintiff's substantive due process claims because there is no protection for public employment); *Lape v. Pennsylvania*, 157 Fed. Appx. 491, 500 (3d Cir. 2005) (no substantive due process property interest in public employment).  Therefore, because plaintiff has no fundamental right to be employed by the City, his Fourteenth Amendment substantive due process retaliation claim must be dismissed with prejudice.

iii.   *Plaintiff fails to aver any facts to support an Equal Protection Claim.*

Plaintiff alleges no facts to support a claim for violation of the Equal Protection clause under the Fourteenth Amendment. He states that he "engaged in protected activities under…the unequal protection [sic] clause" of the Constitution. *Amend. Compl.* at ¶ 2. Equal protection discrimination claims are evaluated under the same framework as Title VII claims. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993).[7] To bring a successful claim for race discrimination under Title VII, a plaintiff must prove that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait . . . [and] 'that the Defendant had a discriminatory intent or motive' . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (*quoting Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-986 (1988)).

Plaintiff avers no facts to support this claim. He does not allege race discrimination. Nor does he name any other employees in the complaint that he received favorable treatment. Therefore, plaintiff's Fourteenth Amendment Equal Protection retaliation charge must be dismissed with prejudice.

3.    Plaintiff Cannot Establish an Liability on the City's Part for Failure to Train.

Even assuming, *arguendo*, that plaintiff could establish that he suffered a constitutional harm; he cannot establish municipal liability for failure to train on the City's part. Therefore, Count III against the City should be dismissed with prejudice.

Plaintiff alleges that his "Constitutional and federal statutory rights were violated as a direct and proximate result of the failure of the City of Philadelphia to properly train, supervise, discipline and control Defendants. By failing to train, discipline and supervise its officers, the City of Philadelphia has displayed deliberate indifference to the rights of plaintiff to be free from

---

[7] Additionally, a § 1983 equal protection claim requires the added showing of not only discriminatory intent but discriminatory purpose. *Bucks v. Berks County*, 1999 U.S. Dist. LEXIS 1225, 7 (E.D. Pa. Jan. 29, 1999).

retaliatory actions." *Amend. Compl.* at ¶¶ 41-42.  Plaintiff also alleges that the City "acquiesced

in the unlawful conduct of its officials in its Park and Recreation Department".  *Id* at ¶ 43.

　　　　To establish a *Monell* claim against the City of Philadelphia under § 1983, plaintiff must

show "(1) the existence of a custom or policy of the municipality and (2) that the municipality's

employees violated the plaintiff's civil rights while acting pursuant to this custom or policy."

*White v. Brommer*, 747 F. Supp. 2d 447, 462-463 (E.D. Pa. 2010).[8]  "A municipality's failure to

adequately train its officers and employees gives rise to a cause of action under Section 1983 if

the deficient training reflects a deliberate indifference to an individual's civil rights, including

those guaranteed under Section 1981, and is 'closely related to the ultimate injury.'"  *Id.* at 463

(citations omitted).  The Third Circuit pointed out that "establishing municipal liability on a

*Monell* claim for inadequate training is difficult."  *Id.* at 463 *citing Reitz v. County of Bucks,* 125

F.3d 139, 145 (3d Cir.1997).  This Court recognizes two distinct theories of recovery that a

plaintiff may use to prove municipal liability based upon a failure to train: pattern-of-violations

theory and single-violation theory.  *Id.* at 463 – 65.  Plaintiff has not pleaded a plausible claim

under either theory.

>    i.    *Plaintiff has not alleged a pattern of violations because he has*
>         *only alleged that his rights were violated on two related occasions*

　　　　Plaintiff cannot establish municipal liability for the City's alleged failure to train its

employees with regard to the unspecified First and Fourteenth Amendment rights because he has

not alleged a pattern of violations of employees' free speech and petition, due process, and equal

protection rights.  In *White*, the court dismissed a plaintiff's municipal liability claims for failure

to train under a pattern-of-violations theory, reasoning that:

---

[8] In White, the plaintiff, an African-American male, sued a police sergeant and his employer, the Borough of
Columbia, Lancaster County, Pennsylvania.  747 F. Supp. 2d at 452.  In his complaint, the plaintiff alleged, *inter
alia,* that defendant Borough of Columbia had failed to train its employees not to intentionally interfere with an
arrestee's right to make and enforce contracts because of the arrestee's race.  Id. at 464.

> [t]he Complaint is devoid of any reference to any other incident involving plaintiff or any other person, wherein a Borough of Columbia police officer or employee intentionally interfered with an individual's right to make or enforce a contract because of that individual's race. The paragraph alleging deficient training mentions no other person, nor citizens generally, whose rights were violated because [of] the Borough's deficient training.  Furthermore, the Complaint does not plead facts sufficient to show, or support a reasonable inference, that Sergeant Brommer's actions were anything more than a one-time occurrence. The facts pled describe a single incident, which is by definition insufficient, pursuant to *Twombly*, *supra*, to state a "failure to train" *Monell* claim under a "pattern of violations" theory.

747 F. Supp. 2d at 464.  Similarly, plaintiff's amended complaint alleges only that two incidents involving a single request for reinstatement are the basis for the alleged retaliation.  *Amend. Compl.* at ¶ 30.  The amended complaint does not mention another employee whose rights were allegedly violated nor does it mention any occurrence other than the two days plaintiff delivered his singular request to the Office of Human Resources and defendants' did not respond.  These two occurrences relating to one request may not technically describe a "single incident" but they are still insufficient to show a "pattern" of violations caused by the City's failure to train.  Accordingly, plaintiff's municipal liability claim under section 1983 for failure to train and/or supervise should be dismissed.  *See White*, 747 F. Supp. 2d at 464.

> ii.     *Plaintiff's complaint contains no allegations to support a claim for failure to train and/or supervise based upon a single-violation theory*

In order to proceed under the single-violation theory of recovery, plaintiff must show (1) a violation of federal rights may be a highly predictable consequence of a failure to train; and, (2) the likelihood of recurrence and predictability of the violation of a citizens' rights could justify a finding that a policymakers' decision not to train an employee reflected deliberate indifference to the obvious consequence of the policymakers' choice -  namely, a violation of a specific constitutional or statutory right.  *See id.* at 464 – 65.  In *White*, the court dismissed a plaintiff's municipal liability claims for failure to train under a single-violation theory when the complaint

failed to allege facts sufficient to show or raise the inference that the defendant's failure to train its employees would result in constitutional violations frequently enough to make training desirable or that the defendants' failure to train the actors in question actually caused the violations alleged.  *Id.* at 464.

Similarly, plaintiff's complaint contains no averments that the alleged failure to train resulting in the supposed violation of his First and Fourteenth Amendment rights is likely to recur frequently enough that training would be desirable or that the lack of training and/or supervision actually caused his harms and showed the deliberate indifference of a policymaker. In order to support his claim, plaintiff alleges only the following:

> The City of Philadelphia [has failed] to properly train, discipline, supervise, and control Defendants regarding the due process rights of the Plaintiff and the right to be free from unlawful retaliatory actions by its officials.  By failing to train, discipline and supervise its officers, the City displayed deliberate indifference to the rights of Plaintiff to be free from retaliatory actions.  The City acquiesced in the unlawful retaliatory conduct of its officials in its Park and Recreation Department.

*Amend. Compl.* at ¶ 30.  This allegation, again, is exactly the sort proscribed under *Iqbal* and *Twombly* because it is nothing more than a reiteration of the elements of the claim supported by generalized conclusory statements.  Following the Third Circuit's holding in *Fowler*, once this bald legal conclusion is disregarded, it is clear that plaintiff has not alleged any facts regarding the City's alleged failure to train its employees.

Plaintiff not only asserts bald legal conclusions, but also creates a circular, broad, and therefore implausible argument.  His allegation against the City essentially boils down to this: the City's failure to train employees to not violate the rights of plaintiff shows deliberate indifference to the rights of plaintiff to be free from actions that violate the rights of plaintiff.

This this is exactly the type of "…unadorned, the-defendant-unlawfully-harmed-me accusation" proscribed under *Iqbal* that a court need not consider.

Because averments supporting this position are necessary to state a claim for failure to train under a single-violation theory, plaintiff's municipal liability claim under section 1983 must be dismissed with prejudice.

4.      Plaintiff fails to Establish Liability of Individual Defendants.

Plaintiff claims that the individual defendants "direct[ed], participat[ed] and/or condon[ed] unlawful retaliatory actions" while they were acting "under color of state law." *Amend. Compl.* at ¶ 45.  When these legal conclusions are stripped from the factual allegations, the only averments plaintiff makes against both defendants are that:

- they were "appointing authorized officials  of the Parks and Recreation Department responsible for approving plaintiff's reinstatement requests."

- they were "involved in the First Civil Action."

- they were "aware of plaintiff's demand for reinstatement and quickly filled the position with another employee."

- Both individual defendants failed to respond to and/or denied plaintiff's request for reinstatement to his former position or comparable positions in "violation of Civil Service regulation entitling plaintiff to reinstatement. "

*Amend. Compl.* at ¶¶ 25, 27-29.

There are no specific allegations that Lynn Spiro had actual knowledge that plaintiff requested and was denied reinstatement.  The amended complaint only specifies her position with Parks and Recreation and her role in the First Civil Action.  *Id.* at ¶ 26.  The only specific allegation made against Linda Turner is that a copy of plaintiff's request for reinstatement was

faxed to her on two separate occasions from the City's Office of Human Resources department. *Id.* at ¶¶ 22, 24.

The individual defendants are not liable under section 1983. Even if plaintiff can establish liability, individual defendants are entitled to qualified immunity and plaintiff's complaints against them are barred.

### i.  *Plaintiff has not plausibly alleged individual defendants liability*

To plausibly allege liability, plaintiff must aver that the individuals personally directed the allegedly unconstitutional acts or had actual knowledge or acquiesced in those acts.  *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id. ; see, also, e.g., Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir. 1980) (civil rights complaint adequate where it states time, place, persons responsible); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978) (same).

Plaintiff relies on the legal conclusion that individual defendants had "appointing authority" to imply that they directly participated in the alleged unconstitutional acts.  This type of legal conclusion is not only disregarded under *Fowler,* it is also inadequate under the Third Circuit's standard of "appropriate particularity."  The only particular allegations plaintiff makes about individual defendants are their positions with Parks and Recreation and the fact that he witnessed the Office of Human resources fax a copy of his request to Linda Turner.  Plaintiff does not particularly allege that each individual defendant had knowledge of his request for reinstatement nor does particularly allege how their specific roles gave them the capacity to hire or accept a reinstatement request.  Plaintiff has not established liability against the individual defendants. Therefore, Count III against them should be dismissed with prejudice.

      *ii.  Even if plaintiff establishes liability, the individual defendants are entitled to qualified immunity.*

Linda Turner and Lynn Spiro are entitled to qualified immunity because none of their alleged conduct violated clearly established constitutional rights.  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'"  *Gwynn v. City of Philadelphia,* 866 F. Supp. 2d 473 (E.D. Pa. Mar. 28, 2012) (*quoting Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citations omitted)).  Qualified immunity allows public officials to be exposed to liability for their actions only when they violate clearly established law.  Generally, those officials are immune when the law is unclear.  *Wilson v. Wigen*, 1997 U.S. Dist. LEXIS 4220 (E.D. Pa. Mar. 31, 1997) (*citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  In other words, qualified immunity is designed to protect "all but the plainly incompetent or those that violate the law."  *Wilson*, 1997 U.S. Dist. LEXIS at *3 (*citing Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Court is, therefore, required to determine whether the official's act was "objectively reasonable" such that "in light of pre-existing law the unlawfulness must be apparent."  *Wilson*, 1997 U.S. Dist. LEXIS at *3 (*citing Anders*on, 483 U.S. at 639-40.  Whether an official is entitled to qualified immunity is a threshold question to be determined by the Court. *Wilson*, 1997 U.S. Dist. LEXIS at *3 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

All of the alleged actions taken by defendants are discretionary decisions made in accordance with Civil Service Regulation 15.031 which states that the appointing authority **may** reinstate an employee within a year of his or her resignation.   In following the appropriate Civil Service regulation, the individual defendants actions were objectively reasonable and did not violate clearly established statutory or constitutional rights.  Therefore Linda Turner and Lynn

Spiro are entitled to qualified immunity, plaintiff's claims against them are barred, and Count III

against them should be dismissed with prejudice.

## IV.    CONCLUSION

Because plaintiff has failed to state a plausible claim for relief in Counts I to IV of his

Complaint, those counts should be dismissed with prejudice.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
SHELLEY R. SMITH, City Solicitor
ELIZABETH MATTIONI, Chair, Litigation Group
SUZANNE REILLY, Chief Deputy City Solicitor

/s/ Margaret J. Theranger
Margaret J. Theranger
Pa. Attorney ID No. 259166
Assistant City Solicitor
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
(215) 683-5183

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, Defendants' Motion to Dismiss was electronically filed, and is available for viewing and downloading via the Court's ECF system.  I further certify that this document was served electronically on the following:

> Olugbenga O. Abiona, Esq.
> 1433 South 4th Street
> Philadelphia, PA 19147

Date: April 2, 2013                    /s/ Margaret J. Theranger_____
                                                Margaret J. Theranger, Esq.
                                                Assistant City Solicitor

# EXHIBIT 1

## 15. RESIGNATION, REINSTATEMENT, RESTORATION AND RETIREMENT

15.01 - RESIGNATION.

15.011 - EMPLOYEE NOTICE OF.  An employee wishing to leave the Civil Service in good standing shall file with the appointing authority, at least fifteen (15) days before leaving the service, a dated and signed written resignation stating the effective date of resignation and reasons for leaving.  The appointing authority shall immediately forward the resignation to the Director with a report on the employee's service performance and pertinent information concerning the cause for resignation.  Failure to comply with this rule shall be entered on the service record of the employee and may be cause for denying future employment by the City.  The appointing authority shall immediately report to the Director the resignation of any employee who fails to give notice.

15.012 - PRE-DATED NOTICES.  No person about to be appointed to any position in the Civil Service shall in advance of or at the time of such appointment sign or execute a resignation dated or undated.  No written resignation shall be made or shall be valid unless it bears the date of the resignation, the date when it shall become effective and the signature of the person resigning, which dates shall be in his/her own handwriting.

15.013 - PROMOTIONS, TRANSFER, DEMOTION AND EQUIVALENT POSITION CHANGE.  No employee shall be required or be permitted to sign any document containing language indicating his/her resignation from City employment as a condition of promotion, transfer, equivalent position change or demotion to another position.

15.02 - INVOLUNTARY RESIGNATION.  Any person who resigns from the Civil Service may ask the Commission, in writing, within thirty (30) days after the effective date of such resignation, for a public hearing, stating his/her reasons.  If on investigation there appears to be satisfactory evidence that the employee has been forced to resign against his/her will and without just cause, or that his or her separation from the service has been involuntary and without just cause, the Commission shall grant him/her a public hearing as hereinafter provided in the case of removal or demotion, and shall treat the separation as though it were a removal.

15.03 - REINSTATEMENT.

15.031 - REINSTATEMENT FOLLOWING RESIGNATION.  An employee who has resigned in good standing may be reinstated within one year to any position in the City service in the same class, in a comparable class, or in a lower class in the same or comparable series of classes having substantially the same qualification requirements, skills or aptitudes if such reinstatement is approved by the Director and by the appointing authority of the department in which the reinstatement is to be made.  All employees reinstated following resignation must serve a new probationary period of six (6) months.

15.032 - REINSTATEMENT FOLLOWING RETIREMENT.  A disabled employee retired from the City service in accordance with the provisions of the City Pension Ordinance (Bill 907) and who subsequently, under the provisions of Section 208 of said Ordinance, is determined to be able to resume employment:

shall, if the disability was service-connected, be reinstated, if physically capable, to his/her former or an equivalent position, with accrued seniority, in the department from which he or she retired.  If not physically capable of resuming the duties of his/her former or an equivalent

position, he or she shall be given employment compatible with his/her disability.  Reinstatement under this section shall not serve to add to or deny the employee any benefits to which he or she may have been entitled under Regulation 32, or

may, if the disability was non-service connected, be reinstated to a position in the City service, compatible with his/her disability.

15.033 - REINSTATEMENT TO FORMER POSITION FOLLOWING INVOLUNTARY DEMOTION.  An appointing authority may, with the approval of the Director, reinstate an employee to his former position following an involuntary demotion, providing the employee had permanent status in the former position and providing that such reinstatement occurs within two years of the demotion.  Reinstated employees will be required to undergo a probationary period as required by Section 14 of these Regulations.  However, no such reinstatement may be made until the appointing authority has considered all persons whose names appear on promotional eligible lists for that class.  The provisions of this Regulation shall be retroactive to July 1, 1974.

15.034 - REINSTATEMENT TO CITY SERVICE OF EMPLOYEES SEPARATED TO WORKERS' COMPENSATION.  At any time following separation from City service and while receiving Workers' Compensation for such service, an employee may be offered employment in lieu of Workers' Compensation and shall be eligible for reinstatement to a position in the City service which is compatible to the employee's disability.


15.04 - RESTORATION.

15.041 - RESTORATION FOLLOWING TERMINATION OF PROVISIONAL APPOINTMENT.  An employee with permanent Civil Service status in a class who has vacated a position in that class to accept another position on the same level or in a higher class, in the same department, under provisional appointment shall, if he so desires, at the termination of such appointment, be restored to a position in the same department in his former class.  An employee with permanent Civil Service status in a class who has vacated a position in that class to accept another position on the same level or in a higher class, in a different department, under provisional appointment, may, at the termination of such appointment, with the approval of the appointing authority of the department in which he had permanent Civil Service status, be restored to a position in that department in his former class, provided however, that if such employee is not restored to a position, his name shall be placed on the appropriate layoff list.

15.042 - RESTORATION FOLLOWING REJECTION DURING PROBATIONARY PERIOD.  An employee with permanent Civil Service status in a class, who vacates a position in that class to accept appointment from an eligible list and is rejected during the probationary period in that position, shall have the right to be restored to a position in the class and department in which he/she had status.  If an employee refuses such restoration, he/she shall be separated from City service following rejection.  An employee so separated shall not have a right to placement on a layoff list.

15.042-1 - Notwithstanding the above, an employee in the class of Police Officer Recruit who does not pass probation as a Police Officer, will be terminated without any reinstatement rights to Police Officer Recruit.

15.042-2 - Notwithstanding the above, an employee in the class of Youth Detention Counselor Trainee who does not pass probation as a Youth Detention Counselor I, will be terminated without any reinstatement rights to Youth Detention Counselor Trainee.

15.042-3 - Notwithstanding the above, an employee in the class of Social Work Intern who does not pass probation as a Social Worker Trainee does not have any reinstatement rights to the class

of Social Work Intern.  The employee has the right to be restored to a position in the Department of Human Services in the class in which he/she had status immediately prior to promotion to the class of Social Work Intern.

15.043 - RESTORATION (VOLUNTARY) DURING THE PROBATIONARY PERIOD.  An employee appointed from an eligible list may, during the probationary period, upon his/her request and with the approval of the appointing authority of the former position, be restored to his/her former position or its equivalent.  The appointing authority of the probationary position may, depending upon the circumstances justifying the voluntary restoration, recommend that the name of the restored probationer be either removed from or restored to the eligible list.


END OF REGULATION 15.

Philadelphia Civil Service Regulations
Transmittal no.331 (Feb-11-2013)

## 2. DEFINITIONS

The following words, terms or phrases as used in these Regulations, shall have the following meanings, unless otherwise clearly indicated in the text:

2.01 - ADMINISTRATIVE BOARD

a committee of the Mayor's Cabinet, as established by Charter provisions, consisting of the Mayor, as chairman, the Managing Director, and the Director of Finance.

2.02 - ALLOCATION

the assignment of a position to a class.

2.03 - APPOINTING OFFICER or APPOINTING AUTHORITY

signifies the employer, supervisor, officer, board, commission, division or department head empowered by law or ordinance, or by lawfully delegated authority, to make appointments to positions in the City service or, in cases where delegation is not prohibited by Charter or law, such other persons as may properly be designated or empowered to act.

2.04 - APPROPRIATE, RELATED ELIGIBLE LIST

an eligible list used to make appointments in the absence of a list for a class in which a vacancy exists. (See Regulation 10.05).

2.05 - CHARTER

The Philadelphia Home Rule Charter adopted April 17, 1951.

2.06 - CIVIL SERVICE

includes all offices and positions of the City service except those specifically exempted under Article VII, Section 7-301 of the Charter.

2.07 - CLASS or CLASS OF POSITIONS

one or more positions so nearly alike that the same descriptive title may be used to designate each of them, that the same qualifications are required for the proper performance of the duties pertaining to them, that the same examination may be used in selecting competent persons to fill them, and that the same pay range and wage schedule can be applied equitably to all employees in the class.

2.08 - CLASS SPECIFICATION

a formal statement which is descriptive, but not restrictive, of a class, containing the title of the position, a general statement of the duties and responsibilities of, typical examples of the duties performed by, and the minimum acceptable employment requirements for employees therein.

2.09 - CLASSIFICATION PLAN

an orderly plan under which positions, on the basis of duties and responsibilities, are grouped into classes, series and/or services and grades; each class designated by a descriptive title and defined by a class specification.

2.10 - COMMISSION

the Civil Service Commission of the City of Philadelphia.

2.11 - CONTINUOUS EXAMINATIONS (or CONTINUOUS TESTS)
open competitive or promotional examinations for specified classes of positions held on a continuing basis without stipulated closing dates for filing of applications, permitting candidates to make application and to be administered such examinations on any day on which the test is given.

2.12 - DAY
a calendar day.

2.13 - DEMOTION, INVOLUNTARY
the reassignment of an employee with permanent Civil Service status, for just cause, from a position in one class to a position in another class for which a lower maximum rate of pay is prescribed.

2.14 - DEMOTION, VOLUNTARY
the reassignment of an employee with permanent Civil Service status, except as specified in Regulation 17, with his or her consent, and the consent of the Director, from a position in one class to a position in another class for which a lower maximum rate of pay is prescribed.

2.15 - DEPARTMENTAL PROMOTIONAL EXAMINATION
a promotional examination limited to permanent Civil Service employees of the department for which the examination is announced.

2.16 - DIRECTOR
The Director of the Office of Human Resources of the City of Philadelphia.

2.17 - ELIGIBLE
any person whose name is on an eligible list.

2.18 - ELIGIBLE LIST
an employment list of persons in rank order who have successfully competed in an open competitive or promotional examination or have Civil Service status on an employment list through layoff, disability, reclassification of their positions, or consolidation or abolishment of a class of positions.

2.19 - EMERGENCY APPOINTMENT
an appointment for not longer than thirty (30) days made without reference to an eligible list in order to meet an emergency situation or to prevent the serious impairment of public business.

2.20 - EMPLOYEE
includes employee and officer in the Civil Service.  The singular shall include the plural, the plural shall include the singular, and the masculine shall include the feminine.

2.21 - EQUIVALENT POSITION CHANGE

a reassignment of an employee from a position in one class to a position in a comparable class in the same salary range and having substantially the same minimum qualification requirements, skills, aptitudes or abilities.

## 2.22 - EXAMINATIONS

all tests, taken together, that are used to determine the fitness of applicants for positions of any class.

## 2.23 - INTERDEPARTMENTAL PROMOTIONAL EXAMINATION

a promotional examination open to permanent Civil Service employees of all departments who meet the announcement requirements.

## 2.24 - LAYOFF

the removal of an employee from his position because of lack of work, lack of funds, or because of a change in departmental organization resulting in abolishment of one or more positions.

## 2.25 - LAYOFF LIST

list of persons who have Civil Service status in a specific class of work, but who are not working in such class because of layoff or service-connected disability.

## 2.26 - OPEN COMPETITIVE LIST

an eligible list of names of persons who have passed an open competitive examination for a particular class of position and whose names are ranked on the list in the order prescribed in these Regulations.

## 2.27 - OPEN COMPETITIVE EXAMINATION

any examination open to all persons, whether employed by the City or not, who meet and comply with prescribed requirements for admission thereto.

## 2.28 - PAY PLAN

a schedule of compensation rates established for the classes of positions included in the Classification Plan.

### 2.281 - EXECUTIVE AND PROFESSIONAL PAY PLAN

the pay schedule and classes assigned to that schedule used for classes which have been assigned to the District Council 47 bargaining unit.

### 2.282 - MANDATORY PAY PLAN

the pay schedule and classes assigned to that schedule used for classes which have been designated as Mandatory with respect to inclusion in the District Council 33 bargaining unit.

### 2.283 - DEPUTY SHERIFF PAY PLAN

the pay schedule used for the classes of Deputy Sheriff, Deputy Sheriff Officer, Deputy Sheriff Sergeant and Deputy Sheriff Lieutenant.

2.284 - N PAY PLAN
the pay schedule used for classes assigned to Local 2186 of District Council 47 and for non-represented employees.

2.29 - PAY RANGE
the minimum and maximum pay rates, together with the intermediate rates, if any, established for a class.

2.30 - PAY RANGE ADJUSTMENT
any change in the rates of pay applicable to a pay range.

2.31 - PAY RANGE DETERMINATION
the assignment of a class to a pay range.

2.32 - PAY RANGE REDETERMINATION
assignment of a class to a different pay range, whether higher or lower, on the basis of a re-evaluation of pay factors appropriate to the class.  (Pay Range Redeterminations do not result in a change in class title.)

2.33 - PERMANENT CIVIL SERVICE STATUS
the rights and privileges granted to an employee who has successfully completed his probationary period following Civil Service test and certification.

2.34 - POSITION
a group of duties and responsibilities assigned or delegated by competent authority, requiring the full or part-time employment of one person.

2.36 - PROBATIONARY PERIOD
a working test period considered an integral part of the examination process during which a new appointee is required to demonstrate his fitness for the position to which he has been appointed by actual performance of the duties of the position.  Persons appointed to positions as a result of open competitive or promotional examinations, or who are reinstated, must serve a probationary period.

2.37 - PROMOTION
the advancement of an employee from a position of one class to a position of another class of higher rank involving more responsible duties and a higher pay range.

2.38 - PROMOTIONAL EXAMINATION
a competitive examination limited to permanent Civil Service employees who meet the announced minimum requirements.

2.39 - PROMOTIONAL LIST
an eligible list of names of persons who have passed a promotional examination for a particular class of position and whose names are ranked on the list in the order prescribed in these Regulations.

2.40 - PROVISIONAL APPOINTMENT

an appointment for not longer than ninety (90) days in any twelve month period, in the absence of an eligible list, of a person who meets the minimum qualifications for the class and who has not been qualified for City employment through the established examination and certification procedures.

## 2.41 - REALLOCATION

a change in allocation of a position by assigning the position to a different class on the basis of a re-evaluation of, or changes and variations in the duties and responsibilities of the position.  (Reallocation usually results in a different class title for the position.)

## 2.42 - RESTORATION

the action by which an employee with permanent Civil Service status who has vacated his position to accept another position as a probationary or provisional appointee is returned to his vacated position following rejection during the probationary period or termination of the provisional appointment.

## 2.43 - SALARY ADJUSTMENT ANNIVERSARY DATE

the date on which an employee may become eligible for an earned pay step increase.

## 2.44 - SEASONAL APPOINTMENT

an appointment to a position requiring an incumbent only during certain parts of the year at recurring, annual or other periods.

## 2.45 - STANDARD INCREMENT

the pay step differential obtained by subtracting the first step rate from the second step rate in a pay range.

## 2.46 - SUSPENSION

an employee's temporary and involuntary separation from City employment for a disciplinary purpose or pending investigation of charges made against the employee.

## 2.47 - TEMPORARY APPOINTMENT

an appointment for not longer than six months in any twelve (12) month period to a position established for a short limited period.

## 2.48 - TRANSFER

a reassignment of an employee from one position to another position in the same class.

## 2.49 - WORK DAY

shall be considered to be a period of eight (8) hours.

## 2.50 - FLEXIBLE WORK SCHEDULE

an approved work schedule which permits the adjustment of the daily hours worked within a flexible band and specifies the minimum core work hours required per day.

## 2.51 - SELECTIVE FACTOR

a selective factor is a knowledge, skill or ability approved by the Civil Service Commission that is essential for satisfactory performance on the job and represents an addition to the basic standards for a position.

## 2.54 - PERFORMANCE-BASED COMPENSATION SYSTEM

a compensation plan approved by the Civil Service Commission by which an employee's compensation and eligibility for increases are determined within formal performance guidelines and comparatio control.

## 2.55 - CAREER ADVANCEMENT LIST

a departmental eligible list used for in-place promotion to a class within a career advancement series.

## 2.56 - CAREER ADVANCEMENT SERIES

a designated class series, represented by District Council 47 or District Council 33, which includes an entry level, in some cases an intermediate level(s), and a full-performance level.  Incumbents of such classes may be promoted in place within the series, as they gain experience and are able to perform assignments of increased difficulty, provided that

1.  the employee submits an application for Career Advancement,

2.  the employee has achieved an overall performance report of Satisfactory or better, on the performance report of record,

3.  time in grade requirements have been met,

4.  no disciplinary suspension of one day or greater has been initiated against the employee since the last performance report, and

5.  the employee is not on the Excessive Use of Sick Leave list.

The employee will serve a probationary period in the Career Advancement class as required in the Civil Service Regulations.  Career Advancement promotions shall be effective on the anniversary date of the employee's appointment in the first level class, provided, however, that Career Advancement promotions may be delayed by the City until the beginning of the fiscal year following that on which the appointments are required in the event that funding is unavailable to make the appointments, and provided that the date of appointment and remuneration for the appointment shall be retroactive to the effective date as defined herein.  An employee whose application for Career Advancement is not received by the Personnel Department within three (3) months of the Career Advancement eligibility date will not be eligible for retroactive payment for the time period between the eligibility date and the date of the Career Advancement promotion.

## 2.57 - FLEXIBLE BENEFITS PLAN

a benefits plan that permits non-represented employees to select health-welfare benefits from among a variety of specified options.

2.58 - CAREER ADVANCEMENT SERIES / NON-REPRESENTED EMPLOYEES

a designated class series in the non-represented category, which includes an entry level, in some cases an intermediate level(s) and a full-performance level.  Incumbents of such classes may be promoted in place within the series as they gain experience, are able to perform assignments of increased difficulty and meet the criteria for non-represented career advancement recommended by the Personnel Director and approved by the Civil Service Commission.

2.59 - FURLOUGH

placing an employee temporarily in a non-pay, non duty status because of lack of work or lack of funds or other non disciplinary reason as determined by the Finance Director.

END OF REGULATION 2.

Philadelphia Civil Service Regulations
Transmittal no.330 (Jan-15-2013)