IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RALPH BLAKNEY,                        :        CIVIL ACTION
                                      :
                                      :
                Plaintiff,            :
                                      :
        v.                            :        NO.   12-6300
                                      :
THE CITY OF PHILADELPHIA,             :
LINDA TURNER, LYNN SPIRO, and         :
JOHN DOES 1–10                        :
                                      :
                                      :
                Defendants.           :


                              __MEMORANDUM__

BUCKWALTER, S. J.                                                June 4, 2013

        Presently before the Court is the Motion to Dismiss by Defendants the City of

Philadelphia ("the City"), Linda Turner, and Lynn Spiro.  For the following reasons, the Motion

is granted.

## I.    FACTUAL BACKGROUND

        According to the facts set forth in the Amended Complaint, Plaintiff was hired in July

1988 by Defendant City of Philadelphia and employed as the Older Adult Center Director in the

City's Park and Recreation Department.  (Am. Compl. ¶ 12.)  On June 6, 2008, Plaintiff filed a

complaint of race discrimination against Defendants with the EEOC under Charge No. 530-2008-

02625.  (Id. ¶ 13.)  Upon receiving a Notice of Right to Sue, Plaintiff filed litigation in the United

States District Court for the Eastern District of Pennsylvania under Civil Action No. 10-4237

("Prior Action").  (Id. ¶ 14.)  While the Prior Action was pending, Plaintiff resigned his

employment with Defendant in January 2011 to take care of his terminally ill mother.  (Id. ¶ 15.)
Months prior to his resignation, he provided both Defendants and the City's Park and Recreation
Department with documentation and formal notification of his mother's medical needs.  (Id. ¶
16.)  In accordance with the Family and Medical Leave act, he also submitted several physician
documents certifying that he assisted his mother.  (Id.)

On September 22, 2011, this Court granted summary judgment in favor of Defendants on
all counts in the Prior Action.  (Id. ¶ 17.)  Four days later, Plaintiff demanded reinstatement to his
employment with the City pursuant to Civil Service Regulation 15.031.  (Id. ¶ 18.)  Plaintiff hand
delivered his letter to the City's Director of Human Resources Department and, while he was
there, a copy of the letter was faxed directly to the Human Resources Director of the Park and
Recreation Department, Defendant Linda Turner.  (Id. ¶ 22.)  While that reinstatement request
was pending, he appealed the District Court's dismissal of the Prior Action to the United States
Court of Appeals for the Third Circuit.  (Id.)

At the time Plaintiff made his request for reinstatement, the position of Older Adult
Center Director in the City's Park and Recreation Department—vacated eight months previously
by Plaintiff—had not been filled by Defendants.  (Id. ¶ 20.)  Nonetheless, Defendants never
responded to Plaintiff's request for reinstatement and "quickly" filled the position with another
employee.  (Id. ¶¶ 23, 27.)  Thus, on December 14, 2011, Plaintiff hand delivered another letter
to the City's Human Resources Office requesting available and appropriate positions in the Park
and Recreation Department so that he could be reinstated to his employment with the City.  (Id. ¶
24.)  Again, while Plaintiff waited at the Human Resources Office, a copy of this letter was faxed
to Linda Turner.  (Id.)

2

Both Linda Turner and Defendant Lynn Spiro (collectively, the "Individual Defendants") were the appointing authorized officials of the Parks and Recreation Department responsible for approving Plaintiff's reinstatement requests and they were both involved in the Prior Action. (Id. ¶ 25.) Indeed, during Plaintiff's previous employment with the City as the Director of the Martin Luther King Older Adult Center in the Recreation Department, Ms. Spiro was Plaintiff's immediate supervisor and Ms. Turner was the Director of Human Resources for the Recreation Department. (Id. ¶ 26.)

Ultimately, the City and these individual Defendants did not reinstate Plaintiff. (Id. ¶ 27.) Neither the City nor the individual Defendants ever responded to Plaintiff's requests for reinstatement. (Id. ¶ 28.) Plaintiff believes such failure to reinstate was in retaliation for pursuing claims of race discrimination against Defendants with the EEOC. (Id. ¶ 30.)

On February 7, 2012, Plaintiff filed a complaint of retaliation under Title VII and the PHRA against the City of Philadelphia with the EEOC. (Id. ¶ 3.) The EEOC issued and mailed a Dismissal and Notice of Right to Sue to Plaintiff on August 30, 2012. (Id.) Thereafter, on November 8, 2012, Plaintiff initiated the current federal action and, on March 19, 2013, filed an Amended Complaint setting forth the following causes of action: (1) retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-1, et seq. against Defendant City of Philadelphia; (2) violation of 42 U.S.C. § 1981 against the Individual Defendants; (3) violation of 42 U.S.C. § 1983 against all Defendants; and (4) violation of the Pennsylvania Human Relations Act ("PHRA"), 42 Pa.C.S. § 951, et seq. Defendants filed a Motion to Dismiss this Amended Complaint on April 2, 2013, and Plaintiff responded on April 18, 2013. The Motion is now ripe for judicial consideration.

3

## II.      STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these

basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently

defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at

678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of

complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the

proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting <u>Twombly</u>, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. <u>Spence v. Brownsville Area Sch. Dist.</u>, No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. <u>Phillips</u>, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Pinkerton v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   <u>Title VII and PHRA Retaliation Claims (Counts I and III)</u>

Defendants first argue that Plaintiff fails to create a plausible claim for relief under Title VII and the PHRA's anti-retaliation provisions.[1] Specifically, they assert that the Amended Complaint does not allege facts that show that his EEOC complaint and federal lawsuit filed against the City in 2008 caused or is connected to his failure to be reinstated after his resignation in 2011. The Court agrees.

Title VII's anti-retaliation provision declares it to be an "unlawful employment practice" for a covered employer "to discriminate against" an employee "because he [or she] has opposed

---

[1] Because the analysis required for adjudicating a plaintiff's Title VII and PHRA claims is identical, the Court will consider those two claims together. <u>See</u> <u>Goosby v. Johnson & Johnson Med., Inc.</u>, 228 F.3d 313, 317, n.3 (3d Cir. 2000).

any practice made an unlawful employment practice" by Title VII, or "because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" thereunder.  42 U.S.C. § 2000e–3(a).  "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'"  Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).  As to the "protected activity" element, "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."  Id. (citing Slagle v. Cnty. of Clarion, 435 F.3d 262, 266 (3d Cir. 2006)).  In either case, the employee must hold "an objectively reasonable belief, in good faith, that the activity [he] oppose[s] is unlawful under Title VII."  Id.

Pursuant to the second element, the United States Supreme Court has clarified what constitutes an adverse employment action.  In Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), it found "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  Id. at 64.  Rather, a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68 (quotations omitted).  Nonetheless, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often

6

take place at work and that all employees experience." Id. at 68.

The third element of a prima facie case requires a showing of a causal connection between the Plaintiff's protected activity and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Moore, 461 F.3d at 341–42 (3d Cir. 2006). To determine whether a plaintiff has met the causation element, the court must consider all evidence that is "potentially probative of causation." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). Generally, temporal proximity of a retaliatory act to a protected activity is probative, but not dispositive of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512–13 (3d Cir. 2003). Stated differently, temporal proximity between the protected activity and the employer action may indicate causation, but "'the mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.'" Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)). To be "unusually suggestive" of a retaliatory motive, "the temporal proximity must be immediate." Lorah v. Tetra Tech, Inc., 541 F. Supp. 2d 629, 636 (D. Del. 2009). The Third Circuit has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell, 206 F.3d at 279 & n.5, whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003); see also Fischer v. Transue, No. Civ.A.04–2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of twenty-two days was insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. Civ.A.04-2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007)

(holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. Civ.A.05-19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation); Killen v. N.W. Human Servs., Inc., No. Civ.A.06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) ((holding that temporal proximity of seventeen days was insufficient to establish causation). "[I]n cases where temporal proximity is not 'unusually suggestive' of retaliatory motive, the Third Circuit has demanded further evidence to substantiate a causal connection." McCloud v. United Parcel Serv., Inc., 543 F. Supp. 2d 391, 401–02 (E.D. Pa. 2008). "Such other evidence may include, but is not limited to, a 'pattern of antagonism' by the employer that could link the adverse action with Plaintiff's complaint." Id.

In the present case, Defendants concede, for purposes of their Motion, the first and second elements of the prima facie case, but focus their arguments on the third element—temporal proximity.   Specifically, Defendants claim that Plaintiff fails to establish a causal connection based on temporal proximity between his alleged protected activities and the alleged adverse employment actions.  They contend that, even assuming ongoing protected activity—from the filing of his EEOC charge on June 6, 2008 through the pending appeal of this Court's dismissal of his action in December 2011—there are no allegations of an "unusually suggestive" temporal lapse or pattern of intervening antagonism on which Plaintiff can rest a claim of causation.

Upon review, the Court notes that this case presents some unusual circumstances.  First, Plaintiff's protected activity began in 2008 when he first filed his EEOC charge and continued through his filing of his Prior Action in federal court in August 2010, the Court's grant of

summary judgment in favor of the defendants on September 22, 2011, and the filing of his appeal with the Third Circuit in October 2011.  Moreover, it was Plaintiff who had voluntarily left his employment in January 2011 and chose to wait until just four days after the dismissal of his federal case on summary judgment to seek reinstatement.  Defendants thereafter did not engage in any specifically identifiable retaliatory activity, but rather simply disregarded his request for reinstatement.  Finally, the alleged adverse employment action—the disregard of requests for reinstatement—occurred starting in September 26, 2011 (the date of his first request) and continued after December 14, 2011 (the date of the second request).

Thus, the precise problem with the present case is not that there is too great of a lapse of time between the protected activity and the adverse employment action, but rather that both the protected activity and the adverse employment action continued over such an extended period of time that it is impossible to make any inference of causation between them.  To allow the mere suggestion of some temporal proximity to satisfy the element of causation in this case would mean that any seemingly adverse action taken by Defendants against Plaintiff any time after the 2008 filing of his EEOC complaint could constitute impermissible retaliation.   Clearly, the law did not intend to so expand the notion of "unusually suggestive" temporal proximity.  "[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  Krouse, 126 F.3d at 503.  Rather, for temporal proximity to be unusually suggestive of a retaliatory motive, it must be "immediate."  No such immediacy exists here.

Given the lack of any unduly suggestive temporal proximity, the onus now falls on Plaintiff to allege facts that would indicate some type of intervening period of antagonism.  The

Amended Complaint, however, is devoid of any factual allegations demonstrating any antagonism—let alone a *pattern* of antagonism—by Defendants against Plaintiff in the period before he submitted his request for reinstatement.  Plaintiff first filed his charge with the EEOC in June 2008, but he does not allege that he was subject to any retaliation or termination at that time.  Plaintiff then commenced a civil action in this Court on August 20, 2010, but makes no allegation that he was fired from his position at the Water Department or suffered any other employment action..  Rather, in January 2011, he voluntarily resigned solely to take care of his terminally ill mother.  (Id. ¶ 15.)  In the nine months between that resignation and Plaintiff's request for reinstatement, there are no alleged interactions between Plaintiff and Defendants that would suggest antagonistic conduct or animus.  Indeed, the only intervening event that Plaintiff discusses is the Court's grant of summary judgment on his pending litigation four days prior to his request for reinstatement—an event not involving any conduct by Defendants.  Finally, Plaintiff makes no factual allegations regarding the circumstances surrounding the disregard of his late September 2011 request for reinstatement from which causation could be reasonably inferred.

Where, as here, there is neither temporal proximity nor intervening antagonism, Plaintiff must provide allegations of "other evidence" which make a causal connection.  Lidwell v. Univ. Park Nursing Care Ctr., 116 F. Supp. 2d 571, 582–83 (M.D. Pa. 2000).  Plaintiff relies on two arguments to make such an inference.  First, he cites Civil Service Regulation 15.031 to suggest that he was entitled to reinstatement to his previous or similar position.  This reliance is misplaced.  Civil Service Regulation 15.031 states:

> An employee who has resigned in good standing ***may*** be reinstated within one year

to any position in the City service in the same class, in a comparable class, or in a lower class in the same or comparable series of classes having substantially the same qualification requirements, skills or aptitudes *if such reinstatement is approved by the Director and by the appointing authority of the department* in which the reinstatement is to be made.

(Defs.' Mot. Dismiss, Ex. 1 (emphasis added).)[2]  Nothing in that Regulation requires reinstatement.  Indeed, the language is intentionally discretionary in nature.  As such, failure to grant him reinstatement under this Regulation is not suggestive of any animosity.

Second, Plaintiff relies on the fact that Defendants never responded to his request for reinstatement, thereby giving him "absolute silent treatment . . . from which a jury could infer animosity," and quickly filled his vacant prior position.  (Pl.'s Resp. Opp'n Mot. Dismiss 16.) Noticeably absent from the Amended Complaint, however, are any allegations suggesting exactly when his previous position was filled and the circumstances regarding that hiring.  Moreover, despite the fact that Plaintiff personally delivered his two letter requests for reinstatement to the City's Human Resources Office, he does not suggest that he was met with any hostility or antagonism, and he actually concedes that that office immediately faxed his letters to the Human Resources Director of the Park and Recreation Department.  (Am. Compl. ¶¶ 22, 24.)  Finally, Plaintiff never asserts that the City explicitly rejected or foreclosed his request for reinstatement or indicated in some fashion that it would never have reinstated Plaintiff to a new position given sufficient time.  Indeed, less than four and a half months lapsed between Plaintiff's initial request for reinstatement and his filing of a new complaint of retaliation with the EEOC.

---

[2] "In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Civil Service Regulations are maters of public record.

In short, although Federal Rule of Civil Procedure 8 requires only notice pleading, the United States Supreme Court has clearly required that a complaint's factual allegations create more than a speculative right to relief.  Twombly, 550 U.S. at 555.  As noted above, both unduly suggestive temporal proximity and an intervening period of antagonism are lacking from any allegations in the Amended Complaint.  Moreover, Plaintiff's assertions that he did not hear back from the City in a desirable time frame and that the City filled his previously vacated position shortly after he first requested reinstatement simply do not permit a reasonable inference of retaliation.[3]  This is particularly true given the other surrounding circumstances regarding his own resignation, the absence of any retaliatory action by Defendant during the two and half years between the filing of his EEOC complain and his resignation, and the lack of any other allegations of hostility towards him.  Accordingly, the Court grants Defendants' Motion to Dismiss these claims.[4]

---

[3]  Plaintiff contends that the question of causal link is generally a factual issue left for a jury to resolve.  For this proposition, Plaintiff cites the Sixth Circuit case of Hartsel v. Keys, 87 F.3d 795, 803 (6th Cir. 1996).  Notably, however, the court in that case also stated that "a court may grant summary judgment even in a causation inquiry, where it is warranted."  Id. Repeatedly, courts in the Third Circuit have dismissed retaliation claims for failure to properly allege causation.  See, e.g., Wade v. Donahoe, Nos. Civ.A.11-3975, 11-4584, 2012 WL 3844380, at *8–9 (E.D. Pa. Sept. 4, 2012); Yeakel v. Cleveland Steel Container corp., No. Civ.A.09-5680, 2011 WL 536536, at *7 (E.D. Pa. Feb. 15, 2011).

[4]  Plaintiff does not request and the Court does not find any basis for a grant of leave to amend the Amended Complaint to properly plead causation.  Defendants filed a previous Motion to Dismiss challenging Plaintiff's initial Complaint in part on the basis of failure to plead causation.  In lieu of responding to this Motion, Plaintiff opted to file an Amended Complaint presumably in an effort to correct various pleading deficiencies.  Having already had an opportunity to amend one time, the Court finds that any further attempts to amend would be futile.  See Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.") (citing Foman v. Davis, 371 U.S. 178, 182

B.      **Retaliation Claim Under 42 U.S.C. § 1981**

In Count II of his Amended Complaint, Plaintiff alleges retaliation by the Individual

Defendants in violation of 42 U.S.C. § 1981.[5]  Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in
> every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the security
> of persons and property as is enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
> other.

42 U.S.C. § 1981(a).  Ordinarily, to establish a basis for relief under section 1981 a plaintiff must

show "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by

the defendant; and (3) discrimination concerning one or more of the activities enumerated in §

1981." See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (internal

citation and quotation marks omitted); see also Estate of Oliva ex rel. McHugh v. New Jersey, 604

F.3d 788, 797–98 (3d Cir. 2010).  Notably, "[t]he elements of a retaliation claim under § 1981 are

parallel to those of a retaliation claim under Title VII."  Kant v. Seton Hall Univ., No. Civ.A.03-

6135, 2008 WL 65159, at *21 (D.N.J. Jan. 4, 2008) (citing Cardenas v. Massey, 269 F.3d 251, 263

(3d Cir. 2001)), aff'd 289 F. App'x 564 (3d Cir. 2008).  Thus, where a Title VII and a § 1981 claim

arise out of the same facts and circumstances and the Title VII claim fails, the § 1981 claim must fail

for the same reasons.  Id.

Count II of the Amended Complaint simply states as follows:

---

(1962)).

[5]  In the context of his § 1983 claim in Count III of the Amended Complaint, Plaintiff
cursorily mentions a different § 1981 claim against the Individual Defendants.  The Court
addresses that claim in conjunction with the discussion of the § 1983 claim.

34.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 33 as though fully set forth herein.

35.     The acts and conduct of the Individual Defendants as sated above where Plaintiff was subjected to adverse actions by the Individual Defendants after complaining and/or opposing race discrimination by the City's Park and Recreation Department and the individual Defendants were violations of the Civil Rights Act, 42 U.S.C. § 1981.

36.     As a direct result of the said retaliatory practices of the Individual Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

(Am. Compl. ¶¶ 34–36.)  Therefore, Plaintiff's § 1981 retaliation claim arises out of the same facts and circumstances as his Title VII retaliation claim.  As the Title VII retaliation fails due to Plaintiff's failure to adequately plead causation, his § 1981 claim must fail for the same reason. Accordingly, Defendant's Motion to Dismiss this claim is granted as well.

**C.     <u>Violation of 42 U.S.C. § 1983</u>**

Count III of Plaintiff's Amended Complaint alleges liability against both the City and the Individual Defendants pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  The statute itself does not independently create substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." <u>Kopec v. Tate</u>, 361 F.3d 772, 775–76 (3d Cir. 2004); <u>see also</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284–85 (2002); <u>Bush v. Lancaster City Bureau of Police</u>, No. Civ.A.07-3172, 2008

14

WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).  A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Plaintiff, in the present case, contends that Defendants Turner and Spiro, while acting under color of state law, violated his rights under the First Amendment, Fourteenth Amendment Due Process Clause, and Fourteenth Amendment Equal Protection Clause.[6]  He further avers that the City bears municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). The Court addresses each theory in turn.

### 1.   First Amendment

Section 1983 provides for a cause of action when a state actor retaliates against an individual for participating or engaging in conduct protected by the First Amendment.  See Bradshaw v. Twp. of Middletown, 145 F. App'x 763, 766–67 (3d Cir. 2005).  A plaintiff asserting a section 1983 First Amendment retaliation claim must show: "(1) that [he] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation."  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (citing Anderson, 125 F.3d at 161).  A public employee plaintiff's conduct is protected by the First Amendment when it is about a matter of public concern and the employer does not have a justification for treating the employee differently than other members of the general public. Muzslay v. City of Ocean City, 238 F. App'x 785, 789 (3d Cir. 2007); see also Fogarty v. Boles,

---

[6]  Count III of Plaintiff's Amended Complaint conflates all of his theories under § 1983. Giving a liberal reading to this Amended Complaint—despite the fact that Plaintiff is represented by counsel—the Court infers that Plaintiff rests his § 1983 claim on the aforementioned theories.

121 F.3d 886, 888 (3d Cir. 1997).  Speech pertains to a matter of public concern if the speech "'can be fairly considered as relating to any matter of political, social or other concern to the community.'" Costello v. City of Brigantine, No. 99–4072, 2001 WL 732402, at *21 (D.N.J. June 28, 2001) (quoting Watters v. City of Phila., 55 F.3d 886, 892 (3d Cir. 1995)).

"Claims of sexual and racial discrimination can constitute matters of public concern, even if plaintiff makes those claims in private." Middleton v. Deblasis, 844 F. Supp. 2d 556, 564 (E.D. Pa. 2011) (citing Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 415–16 (1979); Azzaro v. Cnty of Allegheny, 110 F.3d 968, 978 (3d Cir. 1997)).  Crucially, however, for claims of discrimination to pertain to a public concern, they must either involve allegations related to the performance of an elected official or allege a widespread pattern of discrimination.  See, e.g., Torres v. City of Phila., ___ F. Supp. 2d ___, 2012 WL 5587999, at *4 (E.D. Pa. Nov. 15, 2012) (holding that complaints regarding personal discrimination were not of public concern; rather such complaints must either implicate a public official or allege a wider pattern of systematic discrimination); Miles v. City of Phila., No. Civ.A.11–4040, 2011 WL 4389601, at *4 (E.D. Pa. Sept. 21, 2011) (holding that plaintiff did not speak on a matter of public concern because "as pled, her allegations [did] not implicate defendants in a pattern of conduct directed at anyone other than her"); McCartney v. Pa. State Police, No. Civ.A.09-1817, 2011 WL 3418381, at *31 (M.D. Pa. March 9, 2011) (holding that plaintiff must allege a "wider pattern of inappropriate conduct" in order for allegations to constitute speech on a matter of public concern), report and recommendation adopted by No. Civ.A.09-1817, 2011 WL 3293283 (M.D. Pa. July 29, 2011); see also Bell v. City of Phila., 275 F. App'x 157, 159–60 (3d Cir. 2008) (affirming summary judgment on free speech retaliation claim, reasoning that plaintiff's complaints not a matter of

public concern because they did not seek to expose discriminatory policies at DA's office but complained solely of employee's treatment by superiors).

In the present matter, neither the Amended Complaint nor Plaintiff's Response in Opposition to the Motion to Dismiss identifies the alleged protected speech that forms the basis of Plaintiff's First Amendment retaliation claim.  At best, the Court can identify only the following relevant allegations regarding protected speech:

> 13.    On or about June 6, 2008, Plaintiff filed a complaint of race discrimination against Defendants with the EEOC under Charge No. 530-2008-02625
>
> 14.    Plaintiff continued prosecuting his race discrimination claims against Defendants in the United States District Court after receiving a notice of right to sue in the previous mater under civil action No. 10-4237-RB; herein after referred to as "Previous Action".
>
> . . .
>
> 18.    . . . While Plaintiff's request for reinstatement was pending, Plaintiff continued asserting his claim of race discrimination in the Previous Action by filing a notice of appeal on October 11, 2011 of the District Court's dismissal of his Previous Action.
>
> . . .
>
> 38.    Plaintiff exercised his Constitutional rights under the First and Fourteenth Amendments of the United States Constitution by opposing and protesting Defendants' unlawful discriminatory conducts and practices, and complaining to authorities about the Defendants' unlawful conducts and practices for denying him equal protection under the law.

(Am. Compl. ¶¶ 13, 14, 18, 38.)  This Court's review of Plaintiff's EEOC complaint (attached as an exhibit to his Amended Complaint) as well as the public record docket of the Prior Action reveals that he was challenging only discrimination against himself and was not implicating any public officials or their direct subordinates.[7]  Nothing in these records suggests any complaints of

---

[7]  Specifically, he alleged that "I have been discriminated against because of my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, in that Respondent

more widespread discrimination in the Philadelphia Water Department.  Given these sparse

allegations, which clearly do not involve any speech of public concern, Plaintiff's First

Amendment retaliation claim under § 1983 must be dismissed.

> **2.**  **Substantive and Procedural Due Process Under the Fourteenth Amendment**

Plaintiff next appears to allege violations of both his procedural and substantive due

process rights under the Fourteenth Amendment.  The *substantive* component of the Due Process

Clause bars certain arbitrary and wrongful government actions that would deprive an individual

of life, liberty, or property.  Tazioly v. City of Phila., No. Civ.A.97–1219, 1998 WL 633747, at

*7 (E.D. Pa. Sept. 10, 1998) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)). The first step

in assessing a substantive due process claim is to identify the constitutional interest that was

allegedly aggrieved.  See Harris v. Lehigh Cnty. Office of Children & Youth Servs., 418 F. Supp.

2d 643, 647 (E.D. Pa. 2005) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 464 (3d

Cir. 1989)).  The Court is next required to identify whether the identified liberty interests have

been aggrieved.  Id.

"At the core of *procedural* due process jurisprudence is the right to advance notice of

significant deprivations of liberty or property and to a meaningful opportunity to be heard."

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (emphasis added) (internal citations

omitted).  In a procedural due process claim, the Third Circuit employs a two-stage analysis: (1)

---

failed to place me into or provide me with the choice as to which Older Adult Center Director
position/vacancy (the Mann Location or the other location) I wanted to be placed into, I was
removed from the promotional/hiring list for the Recreation Program Director position, and
Respondent failed to interview and/or select me for the Recreational Program Director
vacancy/position."  (Am. Compl., Ex. B.)

whether the individual interests asserted fall within the Fourteenth Amendment's protection of "life, liberty, or property"; and (2) whether the procedures available provided Plaintiff with "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). Remedial procedures will be found to be constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." See Leonard v. Owen J. Roberts Sch. Dist., No. Civ.A.08–2016, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009) (citing Daniels v. Williams, 474 U.S. 327, 341 (1987) (Stevens, J., concurring)).

Notably, both of these causes of action require the identification of some type of legitimate liberty or property interest protected by the Due Process Clause. Yet, in the present case, neither the Amended Complaint nor Plaintiff's Response Brief clearly identifies any liberty or property interest on which the due process claims rest. Based on the allegations in the Amended Complaint, however, the only possible interest possibly at stake is Plaintiff's alleged entitlement to employment with the City.

To that extent, Plaintiff's entire due process claim must fail. First, with respect to the substantive Due Process Clause, "[w]hether a property interest is protected for purposes of substantive due process is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution." Hill v. Borough of Kutztown, 455 F.3d 225, 235 n.12 (3d Cir. 2006); see also Nicholas v. Pa. State Univ., 227 F.3d 133, 140 (3d Cir. 2000) (holding that the substantive Due Process Clause protects only fundamental rights). The Third Circuit has "held explicitly that public employment is not a fundamental right entitled to

19

substantive due process protection." Hill, 455 F.3d at 235 n.12 (citing Nicholas, 227 F.3d at 142–43).  Therefore, the substantive due process aspect of Plaintiff's § 1983 claim is dismissed.

With respect to Plaintiff's procedural due process claim.  When a plaintiff asserts a property interest, the Court must look to state law to determine whether the property interest is protected by the Fourteenth Amendment.  Dee, 549 F.3d at 229; see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 540 (1985) ("Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'") (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  It is well settled that a plaintiff has a valid property interest in his public employment when he can demonstrate that a "state statute, regulation, or agreement between the employer and employee" establishes such an interest.  Boykin v. Bloomsburg Univ., 893 F. Supp. 378, 395 (M.D. Pa. 1995) (citing Albrechta vs. Borough of White Haven, 810 F. Supp. 139, 142 (M.D. Pa. 1992)), aff'd, 91 F.3d 122 (3d Cir. 1996).

Plaintiff fails to meet his burden of identifying such a state statute, regulation, or agreement that establishes his property interest in his public employment with the City.  Indeed, Plaintiff mentions only Civil Service Regulation 15.031.  As noted in more detail above, that Regulation is entirely discretionary in nature, stating that "[a]n employee who has resigned in good standing *may* be reinstated within one year . . . *if* such reinstatement is approved by the Director and by the appointing authority of the department in which the reinstatement is to be made."  (Defs.' Mot. Dismiss, Ex. 1 (emphasis added).)  No reasonable reading of this Regulation can allow for an interpretation that creates a property interest in employment.  As Plaintiff had no identifiable property interest, the Court need not consider whether the available

remedial procedures provided him with sufficient due process.  Accordingly, this claim is dismissed as well.

### 3.  Equal Protection Under the Fourteenth Amendment

Plaintiff's final theory of § 1983 liability against the Individual Defendants alleges that they violated the Equal Protection Clause of the Fourteenth Amendment.  (Am. Compl. ¶¶ 2, 38.) The Equal Protection Clause provides "no . . . state shall deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  Under the Equal Protection Clause, all persons are not entitled to be treated identically; rather the concept of equal protection stands for the principle that "all persons similarly situated should be treated alike."  Artway v. Attorney General of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  "'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'"  Shoemaker v. City of Lock Haven, 906 F. Supp. 230, 238 (M.D. Pa. 1995) (quoting Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990)) (further quotations omitted); see Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000).  "[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose."  Central State Univ. v. Am. Ass'n of Univ. Professors, 526 U.S. 124, 127–28 (1999) (quoting Heller v. Doe, 509 U.S. 312, 319–21 (1993)).  Under this "rational relationship" test, a plaintiff can ordinarily pursue a claim under the Equal Protection Clause without alleging discrimination based on his or her membership in a particular class.  Garcia v. Newtown Twp., 819 F. Supp. 2d

416, 433 n.12 (E.D. Pa. 2011), aff'd 483 F. App'x 697 (3d Cir. 2012).

"This general rule, however, does not apply to claims arising in the context of public employment.  Because 'employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify,' a public employee cannot establish a violation of the Equal Protection Clause merely by showing that a personnel action taken against him or her was arbitrary or irrational."  Mitchell v. Miller, 884 F. Supp. 2d 334, 353 (W.D. Pa. 2012) (quoting Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 604–05 (2008).  Instead, a public employee attempting to establish a violation of the Equal Protection Clause must demonstrate that the challenged personnel action was taken because of his or her class membership.  Id.  Employment discrimination claims that are based solely on theories of unlawful retaliation—which exist under Title VII and are not recognized under constitutional principles—may not be pursued via § 1983.  Hargrave v. Cnty. of Atl., 262 F. Supp. 2d 393, 440 (D.N.J. 2003) (citing cases that dismissed § 1983 claims where the only unlawful employment practice an employer is alleged to have committed is retaliation for filing a charge of discrimination under Tile VII).  Thus, "[a] claim of retaliation cannot be the sole basis for a § 1983 claim where there is no violation of the Constitution or federal law, other than the retaliation provision of Title VII."  Price v. Del. Dep't of Corr., 40 F. Supp. 2d 544, 558 (D. Del. 1999).

Again, neither Plaintiff's Amended Complaint nor his Response Brief defines the contours of his Equal Protection Clause claim.  Nonetheless, it is abundantly obvious that Plaintiff does not allege any form of racial discrimination or other discrimination based on his class membership.  Rather, the sole basis for all of the allegations in the Amended Complaint is

the purported retaliation by Defendants against Plaintiff for his filing of a claim under Title VII

and the PHRA.  As such retaliation claims exist solely under Title VII and the PHRA and are not

recognized under constitutional principles, Plaintiff may not pursue such a claim via § 1983.

Thus, this claim is dismissed.

### 4.       Section 1983 Claims Against Defendant City of Philadelphia

The Supreme Court has held that municipalities and other local government units qualify

as "persons" subject to liability under § 1983.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690

(1978).  A municipality, however, cannot incur § 1983 liability based on a respondeat superior

theory.  Id. at 691.  Rather, § 1983 imposes liability only where a plaintiff identifies either "a

policy statement, ordinance, regulation or decision officially adopted and promulgated by that

body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even

though such a custom has not received formal approval through the body's official decision

making channels."  Id. at 690–91.  The Third Circuit has refined these definitions, explaining that

policy or custom may be established (1) "[w]hen a decisionmaker possess [ing] final authority to

establish municipal policy with respect to the action issues an official proclamation, policy or

edict," or (2) through a "course of conduct . . . when, though not authorized by law, such

practices of state officials [are] so permanent and well-settled as to virtually constitute law."

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations and quotations omitted).

These standards ensure that municipalities may incur liability only for deprivations resulting

from the decisions of "those officials whose acts may fairly be said to be those of the

municipality."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); Banegas v.

Hampton, No. Civ.A.08–5348, 2009 WL 1098845, at *3 (E.D. Pa. Apr. 22, 2009).

Nonetheless, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  Monell, 436 U.S. at 691.  Thus, in the absence of an underlying violation by the individual state actors, Monell liability cannot stand.  Grazier v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights); Clayworth v. Luzerne Cnty, No. Civ.A.11-254, 2011 WL 6055407, at *7 (M.D. Pa. Dec. 6, 2011) (holding that in the absence of an underlying violation by the individual state actors, Monell liability cannot stand), aff'd, __ F. App'x ___ (3d Cir. 2013).

In the present case, Plaintiff's sole § 1983 allegations against the City are as follows:

41.     The Constitutional rights and federal statutory rights of the Plaintiff were violated as a direct and proximate result of the failure of the City of Philadelphia to properly train, supervise, discipline and control Defendants regarding the rights of the Plaintiff to be free from unlawful retaliatory actions by its officials.

42.     By failing to properly train, discipline and supervise its officers, the City displayed deliberate indifference to the rights of Plaintiff to be free from retaliatory actions for exercising his Constitutional and federal statutory rights and unlawful loss of property.

(Am. Compl. ¶¶ 41–42.)  The Court, however, has found that Plaintiff has failed to state a claim for any underlying constitutional violation under any of the theories posited.  Absent such a violation, Plaintiff cannot establish any § 1983 liability for failure to train, supervise, discipline, or control against Defendant City of Philadelphia.  Therefore, this claim is also dismissed.

### 5.     Conclusion as to Section 1983 Claims

In sum, Plaintiff's § 1983 claim must fail.  As to the claims against the Individual

Defendants, Plaintiff has failed to allege any violation of either the First Amendment, the

Fourteenth Amendment Due Process Clause, or the Equal Protection Clause.[8]  Therefore, all §

1983 claims against them must be dismissed for failure to state a claim upon which relief may be

granted.[9]  In turn, as there is no underlying constitutional violation, the <u>Monell</u> claims against

Defendant City of Philadelphia likewise cannot stand.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court grants Plaintiff's Motion to Dismiss in its

entirety.  As to Plaintiff's retaliation claims under Title VII and the PHRA (Counts I and IV of

the Amended Complaint), the barebones allegations of the Amended Complaint fail to

adequately plead causation sufficient to raise the right to relief above the speculative level.  As to

Plaintiff's § 1981 claim of retaliation (Count II), this cause of action fails for the same reasons as

the Title VII and PHRA retaliation claims.  Finally, with respect to Plaintiff's § 1983 claims

(Count III), Plaintiff does not set forth factual allegations sufficient to establish any constitutional

violation under either the First Amendment, the Fourteenth Amendment Procedural or

---

[8]  Paragraph 39 of the Amended Complaint—under Count III of the Amended Complaint entitled Section 1983 Violation—alleges that "Plaintiff's action of complaining about been [sic] subject to race discrimination was also a protected activity under the Civil Rights Act, 42 U.S.C. Section 1981."  (Am. Compl. ¶ 39.)  To the extent this cursory allegation can be deemed to have raised a § 1981 claim against the Individual Defendants, the Court also dismisses it.  To state a claim under section § 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts."  <u>Brown v. Phillip Morris, Inc.</u>, 250 F.3d 789, 797 (3d Cir. 2001) (quotation omitted).  The Amended Complaint contains no allegations of racial animus or intent to discriminate on the basis of race.

[9]  Given the dismissal of these claims, the Court need not address Defendant's arguments of either lack of participation or qualified immunity.

Substantive Due Process Clauses, or the Equal Protection Clause.  As Plaintiff has already had the opportunity to amend his Complaint once in response to a Motion to Dismiss filed by Defendants, the Court finds that any further efforts to amend will be futile.  Accordingly, the Court dismisses the entire Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).